# XXXXX XXXX

525 1st Ave, North Brunswick, New Jersey 08902●732-325-4192

October 4, 2019

Office of the Clerk (Via USPS Priority Mail)
United States District Court
For the District of New Jersey
United States Courthouse
Martin Luther King Building & Courthouse
50 Walnut Streets Room 4015
Newark, New Jersey 07102

Re: XXXXX XXXXXX v. NJ JUDICIARY/ ADMINISTRATION OF THE COURT
LORI GRIMALDI,  JENNIFER SINCOX,  LAURA SCHEWITZER, NATALIE MYERS,
DAWN BREVARD-WATER, MARISSA QUIGLEY, ALEXANDER BATTEY JR,
CAROLINE BIELAK;  AND JOHN and JANE DOE(S) 1-100

Case No.:

Dear Sir/Madam,

Enclosed, please find an original and four copies of a complaint for the above-referenced matter. Also enclosed is a certified cashier's check for $400.

Kindly return any copies of the complaint marked "filed" in the pre-paid, self-addressed USPS Priority Mail envelope.

Thank you for your consideration in this matter.

Respectfully submitted,

XXXXX XXXXXX

XXXXX XXXXXX
525 1ST AVENUE
NORTH BRUNSWICK, NEW JERSEY 08902
XXXXX XXXXXX
XXXXX XXXXXX
PLAINTIFF, Prose

XXXXX XXXXXX,                          :

      Plaintiff,                     :    **UNITED STATES DISTRICT COURT**
                                     :    **FOR DISTRICT OF NEW JERSEY**
                                     :
v.                                     :    **CASE NO.:**
NJ JUDICIARY                           :
ADMINISTRATION OF THE COURT            :    **COMPLAINT**
LORI GRIMALDI,                         :
 JENNIFER SINCOX,                     :    **JURY TRIAL DEMANDED**
 LAURA SCHEWITZER,                    :
NATALIE MYERS,                         :
DAWN BREVARD-WATER,                    :
MARISSA QUIGLEY,                       :
ALEXANDER BATTEY JR,                   :
CAROLINE BIELAK;                       :
AND JOHN and JANE DOE(S) 1-100         :

      Defendant(s).

## INTRODUCTION

1.     In this action, Plaintiff XXXX XXXX seeks damages from Defendants NEW

JERSEY JUDICIARY/ ADMINISTRATION OF THE COURT, LORI GRIMALDI, JENNIFER

SINCOX, LAURA SCHEWITZER, NATALIE MYERS, DAWN BREVARD-WATER,

MARISSA QUIGLEY, ALEXANDER BATTEY JR, CAROLINE BIELAK; AND JOHN and

JANE DOE(S) 1-100 for Discrimination, Work Place Harassment, Retaliation, a Hostile Work

Environment, Tortuous Interference, and Intentional Infliction of Emotional Distress.

2.     The Defendants have acted in a callous and malicious manner with the intent to

discredit the Plaintiff's valid claims of discrimination, knowingly permitted ongoing actions of

discrimination, a hostile work environment, workplace harassment, tortious interference with

Plaintiff's prospective and economic advantage, and tortious interference with Plaintiff's ability

to perform her duties, even after Plaintiff and reported such actions to her the Assistant Criminal Division Manager, Criminal Division Manager, the Trial Court Administrator, the Equal Employment Opportunity Manager, and the Human Resource Manager.

3.      The Plaintiff was subjected to hostility, menacing, and demeaning behaviors by staff members and management which interfered with her ability to do her job effectively and caused severe duress and various medical and mental health issues. The Plaintiff filed various complaints according to the policies and procedures of the JUDICIARY on multiple occasions, however, the hostility, menacing, and demeaning behaviors continued without consequences. Defendant(s) committed these malicious and conscious wrongful actions for no other purpose than to retaliate against the Plaintiff's reporting, of nefarious activities and to increase their claims of her inferiority.

4.      The United States Constitution, and rulings from the highest Court in the land, have lawful devices to protect employees from such horrors.

5.      At all times relevant hereto, the actions alleged herein, and the damages suffered by the Plaintiff as a result of these actions, were caused by the actions, or inactions, by, The Defendants, LORI GRIMALDI, NJ JUDICIARY/ADMINISTRATION OF THE COURT, JENNIFER SINCOX, LAURA SCHEWITZER, NATALIE MYERS, DAWN BREVARD-WATER, MARISSA QUIGLEY, ALEXANDER BATTEY JR, CAROLINE BIELAK; AND JOHN and JANE DOE(S) 1-100, jointly, severally, individually and/or in the alternative and without any contributing actions on the part of the Plaintiff XXXX XXXX. Defendants' actions have caused the Plaintiff to suffer physically, emotionally and financially. Plaintiff alleges a violation of her constitutional rights, Title VII Civil Rights Act, discrimination, retaliation, hostile work environment, harassment, intentional infliction of emotional distress and tortuous interference.

6.      The Defendant, LORI GRIMALDI, conspired to do this with Defendants NJ

JUDICIARY/ADMINISTRATION OF THE COURT, JENNIFER SINCOX, LAURA SCHEWITZER, NATALIE MYERS, DAWN BREVARD-WATER, MARISSA QUIGLEY; ALEXANDER BATTEY JR, CAROLINE BIELAK; AND JOHN and JANE DOE(S) 1-100, who have abused their power by knowingly and willingly refusing to following departmental policies and procedures to investigate complaints of discrimination, falsifying documentation, knowingly and willingly made false statements against the Plaintiff, discriminating against, retaliation against, harassed the Plaintiff, creating a hostile work environment. It has become so egregious that Plaintiff has been forced to file two separated EEOC (2014&2018) complaints against the Judiciary. Even the threat of a previous EEOC complaint, and the removal of the former Assistant Criminal Division Manager for discriminating against the Plaintiff, have done absolutely nothing to deter them from their nefarious actions. As a result of the harm caused by the Defendants, the Plaintiff suffers with panic attacks and has been diagnosed with Acute Stress Disorder, Post Traumatic Stress Disorder, Hypertension and prescribed blood pressure medications. The Plaintiff was forced to take a six week stress leave due to work place harassment and the Plaintiff is currently approved for  FMLA intermittent leave due to work place harassment. The Plaintiff continues to monitor her health and is currently awaiting the results of several tests.  The Plaintiff's marriage has also been strained. As a result of the harm caused by the Defendants, the Plaintiff has also struggled with taking care of a sick child who has one of the most serious chronic disease in infants and children.

7.    The Plaintiff has suffered severe emotional distress as a result of the harm brought on by the Defendants' recklessness and is entitled to damages. The Defendants, LORI GRIMALDI, and   NJ JUDICIARY/ADMINISTRATION OF THE COURT, JENNIFER SINCOX, LAURA SCHEWITZER, NATALIE MYERS, DAWN BREVARD-WATER, MARISSA QUIGLEY, ALEXANDER BATTEY JR, CAROLINE BIELAK; AND JOHN and JANE DOE(S) 1-100, have acted intentionally and recklessly; in an extreme and outrageous

manner; and their conduct is the cause of severe emotional distress. Similarly, the emotional distress that has been suffered by the Plaintiff is palpable, severe, and enduring as a result of Defendant(s)'reckless and malicious behaviors which will adversely affect Plaintiff's emotional, physical, and financial well-being for the rest of her life.

## PARTIES

8.      Plaintiff XXXXX XXXX is a resident of the Township of North Brunswick, County of Middlesex, State of New Jersey.

9.      Upon information and belief, Defendant NJ JUDICIARY ADMINISTRATION OF THE COURT is an government entity located at Richard J Hughes Justice Complex 25 Market Street, in the City of Trenton, County of Mercer, State of New Jersey.

10.      Upon information and belief, LAURA SCHEWITZER, is an employees of the Defendant NJ JUDICIARY with principal offices at 56 Paterson Street in the City of New Brunswick, County of Middlesex, State of New Jersey, 5th Floor.

11.      Upon information and belief, LORI GRIMALDI is employees of the Defendant NJ JUDICIARY with principal offices at 14 Kirkpatrick Street in the City of New Brunswick, County of Middlesex, State of New Jersey, 2nd Floor.

12.      Upon information and belief, NATALIE MYERS is employees of the Defendant NJ JUDICIARY with principal offices at 100 Bayard Street in the City of New Brunswick, County of Middlesex, State of New Jersey.

13.      Upon information and belief, MARISSA QUIGLEY, is an employees of the Defendant NJ JUDICIARY with principal offices Richard J Hughes Justice Complex 25 Market Street, in the City of Trenton, County of Mercer, State of New Jersey.

14.      Upon information and belief, DAWN BREVARD-WATER, is a resident of the State of New Jersey.

15.     Upon information and belief, ALEXANDER BATTEY JR  is employees of the Middlesex County Prosecutor's Office with principal offices at 25 Kirkpatrick Street, 3rd Floor in the City of New Brunswick, County of Middlesex, State of New Jersey.

16.     Upon information and belief, CAROLINE BIELAK is employees of the Public Defender Office with principal offices at 550 Jersey Ave in the City of New Brunswick, County of Middlesex, State of New Jersey.

## JURISDICTION AND VENUE

17.     This Court has both personal and subject matter jurisdiction to hear this case pursuant to 28 U.S.C. §§ 1331, 1332, 1367.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events that give rise to this action occurred within this District and Parties reside and operate within this district.

19.     Jurisdiction is proper under § 1983 as this is a case of "joint action" in which public and private parties work together to perpetuate unconstitutional conduct in which public and private parties actively conspire to deprive people of their constitutional rights. Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970).

## FACTUAL ALLEGATIONS

20.     Plaintiff XXXX XXXX, is  employed as a Probation Officer with the NJ Judiciary since January of 2012.

21.     Throughout the Plaintiff's entire employment history she has reported various incidents of discrimination, differential treatment, and harassment, which has resulted in work place harassment, retaliation, and a hostile work environment which have all been ignored by the Judiciary. Simply put, racial discrimination is deeply embedded in the NJ JUDICIARY,

ADMINISTRATION OF THE COURT. The NJ JUDICIARY is liable under Title VII for such harassment and discrimination because it knew, or should have known about the racial discrimination and harassment but failed to take prompt action. Instead, it did just the opposite. It condoned, ratified, and otherwise allowed the racial discrimination, harassment, and retaliation to continue for years which resulted in a hostile work environment.

22.     Plaintiff initially filed her first official complaint of discrimination in December of 2013 after two years of various incidents of discrimination and mistreatment. As a result of that complaint the Plaintiff was retaliated against and charged with two disciplinary complaints in an attempt to demonstrate the Plaintiff's inferiority. Plaintiff then filed an amended EEOC complaint including retaliation. In addition to filing the EEOC complaints with the Judiciary, a complaint was filed with the EEOC federal. The Judiciary knowingly, willingly, and neglectfully failed to properly follow their own policy and procedures with respect to discrimination, retaliation, harassment and a hostile work environment. The Judiciary failed to follow their own policies and procedures to safe guard employees from harassment, retaliation or a hostile work environment. The Plaintiff has suffered unrelenting and persistent harassment by The Defendant, NJ JUDICIARY/ADMINISTRATION OF THE COURT since that complaint. Even with the change in leadership, discrimination is still rampant among new African American employees, which strongly demonstrate there is a culture of white superiority.

23.     Most recently, in the Spring of 2017 the Plaintiff went to her union, Probation Association of New Jersey(PANJ) with a DRAFT grievance and advised them of the unreasonable work expectations, including but not limited to, overflowing caseload, expectations of completing a report a day, covering lower level employees responsibilities etc. The Vicinage Union President, Joel Narvaez and Union Shop Stewart, Annamarie Guedes meet with The Defendants, LAURA SCHEWITZER, Criminal Division Manager, and JENNIFER SINCOX, Assistant Criminal Division Manager, and advised them of the drafted grievance. The Defendant,

LAURA SCHEWITZER acknowledged she was unaware of how the division was managed, acknowledged there were some serious problems and advised she was going to address the situation.  The Defendants, LAURA SCHEWITZER and JENNIFER SINCOX advised the Plaintiff's union, Probation Association of New Jersey(PANJ), no Probation Officer would be written up due to the division's negligence.

24.    On November 3, 2017, Plaintiff  reported to Defendant JENNIFER SINOX the discriminatory, rude and unprofessional behaviors of then team leader Defendant LORI GRIMALDI. Defendant JENNIFER SINOX brushed the Plaintiff off and never investigated this claim.

25.    On the 28th of November, the Plaintiff received an email from her supervisor, Jennifer Carrion, about "concerns" regarding her cases and six of those cases were transferred to other Probation Officers to complete. In December of 2017, The Plaintiff was asked to provide a statement regarding the cases. On 1/17/2018,  Defendant LORI GRIMALDI sent the Plaintiff an email regarding another case, while the Plaintiff was out on a FMLA leave. On 01/19/2019, the Plaintiff was asked to provide a statement regarding the email. On 02/07/2019, The Plaintiff was served with a disciplinary action recommending five day suspension without pay.

26.    In August of 2018, a Charge of Discrimination and Retaliation was filed with the Equal Employment Opportunity Commission ("EEOC") alleging Discrimination and Retaliation. On July 17, 2019, a notice of Right to Sue Letter was issued by the EEOC.

27.    The Defendant, NJ JUDICIARY/ADMINISTRATION OF THE COURT was knowingly, willfully and purposefully neglectful as they failed to recognize their negligence due to their unstructured and dysfunction work environment. Mandatory Drug Court was established and two senior probation officers were taken away from the pool of Probation Officers who completed regular PSI/PTI reports. In additional to that, the union filed a grievance against The Defendant, NJ JUDICIARY/ADMINISTRATION OF THE COURT and there was a hiring

freeze, as a result the division was understaffed(staffed at 60%). Additionally, Bail Reform begin in January of 2017 and the time allotted for the disposition of cases were shorten to 180 days. Furthermore, The Defendant, NJ JUDICIARY sentence a disproportionate number of Disorderly Persons cases in the Superior Court than other counties. The Defendant, NJ JUDICIARY, ADMINISTRATION OF THE COURT created the problem of the backlog in cases, having a high number of cases, and having the division understaffed. Probation Officers went from completing approximately 10 to 12 cases a month (4 PTI/ 6 to 8 PSI or 140 case per year) to being assigned a case and having to complete a case a day. Probation Officer(s) were assigned as much as 14 cases in one day. Additionally, the steps to prep a case were always changing and incoherent. Moreover, the computer program used to complete the reports were down at least twice a week during this time.

28.    The Defendant JENNIFER SINOX abused her power, and committed Official Misconduct when she failed to investigate the Plaintiff's allegations of discrimination. Additionally, Defendant JENNIFER SINOX abused her power, and committed Official Misconduct when she provided false information to Human Resources to charge the Plaintiff with Incompetency, Inefficiency or Failure to Perform duties and Neglect of Duty. Defendant JENNIFER SINOX knowingly, willingly and neglectfully provided false information to Human Resources to ensure charging the Plaintiff and provided false testimony at Plaintiff's hearing. Additionally, the Vicinage admitted to commencing the disciplinary process weeks after the Plaintiff complained to Defendant JENNIFER SINOX on 11/03/2017. Essentially ignoring the Plaintiff's claims of discrimination. Also, Defendant JENNIFER SINCOX served another African American Probation Officer with a disciplinary charge days after the Plaintiff was served. The Plaintiff completed twice as many reports(166 reports) as the other African American Probation Officer(85 reports) completed at that time, however, the Plaintiff was served days before that employee. Furthermore, Plaintiff completed over 200 reports for the year of

2017 which negates the Defendants claim of Incompetency, Inefficiency or Failure to Perform duties and Neglect of Duty. Defendant willfully, purposefully, and with malice, retaliated against Plaintiff for reporting Defendant LORI GRIMALDI creating a false narrative of the Plaintiff. Moreover, the Defendant JENNIFER SINCOX failed to take into consideration the days the Plaintiff was out of work due to FMLA leave. The Plaintiff's cases were resigned because the Plaintiff was over assigned and out of work on approved FMLA time not because the Plaintiff was Incompetent, Inefficient or Failure to Perform duties and Neglect of Duty. Defendant JENNIFER SINCOX testified at the Plaintiff's hearing that FMLA does "not count" and the JUDICIARY has no rules or course of action with respect to FMLA, a clear violation of the State and Federal Family Medical Leave Act. Additionally, there were 18 working days in November of 2017, the Plaintiff worked approximately 15 days. Plaintiff was assigned eleven reports to complete(8PSI/3PTI) and completed fifteen reports(12PSI/3PTI). The Plaintiff complete one hour of training, used six vacation hours and 11 FMLA sick hours. The Defendant's claim that the Plaintiff was Incompetency, Inefficiency or Failure to Perform duties because she did not complete twenty one reports in fifteen working days is an attempt to prove the Plaintiff is inferior and a unreasonable work expectation. Additionally, the Defendant's required the Plaintiff to complete four reports on a state holiday(11/24/2017). Moreover, the Plaintiff's supervisor Jennifer Carrion testified that the Plaintiff was required to complete three cases a week. In the month of November of 2017, the Plaintiff was assigned to complete five cases per week for three weeks in a row, which was against their rules. In that month, the Plaintiff worked 15 days, and worked on 26 separate cases.

29.     The Defendant LAURA SCHEWITZER knowingly, willfully and purposefully neglected her duties as Criminal Division Manager when she failed to investigate the Plaintiff's allegations of discrimination. Moreover, Defendant LAURA SCHEWITZER advised the Plaintiff's union, (PANJ), no Probation Officer would be written up due to the division's

negligence. Defendant LAURA SCHEWITZER abused her power, committed Official Misconduct and discrimination when she decided to hold black employees to a separate standard than other employees. Moreover, the entire Probation Officer staff met with the Defendant LAURA SCHEWITZER on 02/09/2019, two days after the Plaintiff was served and the entire Probation Officer staff complained about the current working conditions including but not limited to caseload assignments, unreasonable work expectations and the discriminatory and rude behaviors of Defendant LORI GRIMALDI. Defendant LAURA SCHEWITZER knowingly, willfully, purposefully and neglectfully failed to act or intervene when she observed subordinates employees violating the Title VII Civil Rights Act.

30.     Defendant DAWN BREVARD-WATER, former Trial Court Administrator knowingly, willfully, purposefully and neglectfully failed to act or intervene when she observed subordinates employees violating the Title Civil VII Rights Act and failed to investigate the Plaintiff's allegations of discrimination. After the Plaintiff was charged with the discipline, the union PANJ vice president, Ellen Cribbin, visited the Defendant former TCA DAWN BREVARD-WATER and spoke with her about the known problems in the vicinages and the Vice President informed the Defendant DAWN BREVARD-WATER that she felt the Plaintiff was being "target and singled out". The Vice President was met with silence. Defendant DAWN BREVARD-WATER did not deny the allegations she just "ignored it". Additionally, the Plaintiff met with Defendant DAWN BREVARD-WATER and advised her of the discriminatory, rude and unprofessional behaviors of then team leader Defendant LORI GRIMALDI. Another Team Leader, an African American, also met with Defendant DAWN BREVARD-WATER and confirmed the discriminatory behaviors of then team leader Defendant LORI GRIMALDI. The Defendant LORI GRIMALDI has since been promoted to the Assistant Criminal Division Manager. Defendant former TCA DAWN BREVARD-WATER knowingly, willfully,

purposefully and neglectfully failed to act or intervene when she observed subordinates employees violating the Title VII Civil Rights Act.

31.     The Defendant NATALIE MYERS, Human Resources Manager, abused her power, and committed Official Misconduct when she used false pretenses to charge Plaintiff with Incompetency, Inefficiency or Failure to Perform duties and Neglect of Duty and when she knowingly, willingly and neglectfully provided the false opening statement at Plaintiff's hearing. Defendant JENNIFER SINCOX provided documentation to Defendant NATALIE MYERS that reflects Plaintiff was one of the highly assigned and highly producing Probation Officers negating the claim the Plaintiff was Incompetent and Inefficient. Defendant NATALIE MYERS knowingly, willfully, purposefully and neglectfully failed to act or intervene when she observed subordinates employees violating the Title VII Civil Rights Act.

32.     The Defendant MARISSA QUIGLEY, Hearing Officer for the NJ JUDICIARY, ADMINISTRATION OF THE COURT, abused her power, and committed Official Misconduct when she knowingly, willingly and neglectfully failed to analyze data to discover facts in cases and failed to write hearing decisions containing clear, accurate, and logical histories, findings, and conclusions. As a defense, the Plaintiff testified regarding retaliatory actions of Defendants LORI GRIMALDI, and JENNIFER SINCOX. Defendant MARISSA QUIGLEY knowingly, willingly and neglectfully ignored the issues in her findings against the Plaintiff and did not address retaliation. As per the Judiciary's policy, state and federal law, employees are to report as incidents or rumors of incidents and they are to be investigated. Additionally, the Defendant NJ JUDICIARY, ADMINISTRATION OF THE COURT responded to the charge of retaliation in their response to the Federal EEOC complaint, therefore, Defendant NJ JUDICIARY, ADMINISTRATION OF THE COURT was fully aware of the Plaintiff's defense. Defendant NJ JUDICIARY, ADMINISTRATION OF THE COURT did what they always did, they ignored it. Defendant MARISSA QUIGLEY knowingly, willfully, purposefully and neglectfully failed to

act or intervene when she observed JUDICIARY employees violating the Title VII Civil Rights Act.

33.    The Defendants' actions are malicious and reckless, and have caused irreparable harm to the Plaintiff, and they used their job titles to perpetuate their nefarious actions and to create a false narrative of the Plaintiff being inferior. The Defendants' behaviors and actions were so outrageous in character and so extreme in degree that it goes beyond all possible bounds of decency and is atrocious and utterly intolerable in a civilized and lawful community. The Defendants' actions are a direct cause of the Plaintiff's emotional distress, a distress so severe that no person could possibly be expected to endure such distress.

## COUNT ONE
## TITLE VII of the CIVIL RIGHTS ACT OF 1964

34.    This is an action for relief from employment discrimination in violation of Title VII of the Civil Rights Act of 1964 and 1991, *as amended* ("Title VII"),  national origin, color, retaliation. Per agency policy and/or federal law, employees are to report all incidents and rumors of incident and they are to be investigated. Plaintiff's claims in this matter where admitted to being filed verbally by the Defendant  NJ JUDICIARY/ADMINISTRATION OF THE COURT however, Defendants failed to investigate Plaintiff's claims, even when they were brought to Defendants attention on multiple occasions.  Even with the change in leadership, discrimination is still rampant, which strongly demonstrate there is a culture of white superiority.

35.    Plaintiff have received differential treatment and have been treated with a lack of respect on a regular basis. African American employees are subjected to far harsher discipline than non-African American employees. One charge in the disciplinary action was failing to respond to an email that was sent while Plaintiff was absent from work due to approved FMLA leave. Defendant LORI GRIMALDI was reported for her discriminatory behaviors by over five black employees and Defendant LORI GRIMALDI has only been promoted. Defendant LORI

GRIMALDI was never even investigated which is a violation of JUDICIARY policies and procedures.

36.     African American employees are segregated within the office with respect to their seating assignment. African American employees are held to a different standard with respect as to how they are required to write their PTI/PSI reports. African American employees are required to complete work on federal and state holidays. Additionally, false and negative remarks are added to African American employees performance evaluations and left out of non African American performance evaluations. African American employees are not trained adequately like non-African America employees. African American employees are subjected to disciplinary charges when they use approved FMLA time, while non-African American are not. African American employees are assigned work while out of FMLA leave while non-African American employees are not.

37.     African American employees decisions to accept or reject a client's of the court enrollment into PTI are subjected to more scrutiny and decisions for acceptance or rejection is based upon the Probation Officer's race. African Americans are forced to write longer and more in-depth reports than non-African American Probation Officers.

38.     The Defendant JUDICIARY/ADMINISTRATION OF THE COURT admitted to discriminatory practices and differential treatment of employees and has done nothing to correct these practices. The entire Division attended a mandatory "Team Building Training". There were three separate session, August 13, 14 and 22 of 2019. In every session, African America employees reports various incidents of discrimination and differential treatment. To date, nothing has been done regarding the reporting of various incidents of discrimination and differential treatment. Defendants, LAURA SCHEWITZER and LORI GRIMALDI attended the first two session and heard the complaints by their employees and have done absolutely nothing to eliminate or improve the current working conditions.

39.    African American employees are subjected to disciplinary charges and non-African American employees are not. Bail reform began on 1/1/2017. An African American investigator was written up and suspended for 30 days without pay for failing to do a bail investigation for a bail motion within 20 days of the new procedures. Defendant, JENNIFER SINCOX gave the hard copy of the client of the court file to a staff not in the building and failed to advise the investigator of that information when it was necessary for her to perform her duties. Another investigator, non-African American also failed to performed her duties and scan a copy of the client of the court original bail investigation form into the computer however she was not written up.

40.    African American employees are subjected to far harsher discipline than non-African American employees. Recently, Defendant former TCA DAWN BREVARD-WATER and an employee from Human Resources (both African American) were escorted out of the building by the Sheriff and they are no longer employed by the Judiciary, for reasons unknown to the Plaintiff. Former Assistant Criminal Division Manager Ann Rizzi (non-African American) was allowed to resign from her position instead of being brought up on departmental charges of for discrimination against the Plaintiff. Additional, a non-African American PO was allowed to resign from his position with his pension, after it was discovered he was falsifying documentation. A non-African American investigator, whose doctor did not medically cleared her to return to work, was brought up on departmental charges of abandoning her position. A newly hired African American PO did not pass her probationary period and was advised she did not pass because of her trainer, a non-African American Senior PO. It was not reflected in the non-African American Senior PO performance evaluation however it is reflected in the African American PO evaluation when it was no fault of her own.

41.    As a direct and proximate result of these malicious and conscious wrongful actions, the Plaintiff has suffered, and will continue to suffer indefinitely, severe emotional

distress, and damages, and is entitled to damages from the Defendants, including punitive damages, to be determined at trial.

## COUNT TWO
## RETALIATION

42.     Plaintiff alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

43.     According to Federal law, the Defendant, LORI GRIMALDI, and JENNIFER SINCOX are guilty of retaliation. Defendants LAURA SCHEWITZER, NATALIE MYERS, DAWN BREVARD-WATER, MARISSA QUIGLEY; ALEXANDER BATTEY JR, CAROLINE BIELAK; AND JOHN and JANE DOE(S) 1-100 are guilty of failing to act when they legally are required to mediate and mitigate the situation.

44.     The actions alleged herein, and the damages suffered by the Plaintiff as a result of these actions, were caused by the actions, or inactions by Defendants LORI GRIMALDI, and NJ JUDICIARY/ADMINISTRATION OF THE COURT, JENNIFER SINCOX, LAURA SCHEWITZER, NATALIE MYERS, DAWN BREVARD-WATER, MARISSA QUIGLEY; ALEXANDER BATTEY JR, CAROLINE BIELAK; AND JOHN and JANE DOE(S) 1-100 jointly, severally, individually and/or in the alternative and without any contributing actions on the part of the Plaintiff.

45.     Defendants LORI GRIMALDI and JENNIFER SINCOX admitted and acknowledged they begin investigating the Plaintiff for a discipline charge one month after the Plaintiff reported Defendants LORI GRIMALDI for her violation of Title VII of the Civil Rights Act. Defendants LORI GRIMALDI and JENNIFER SINCOX willfully and purposefully, and with malice, provided misleading and false information to Defendant NATALIE MYERS to retaliate against the Plaintiff as a result of her claim of discrimination.

46.     Defendants ALEXANDER BATTEY JR, Assistant Prosecutor and CAROLINE BIELAK, Public Defender, abused their power, committed Official Misconduct and retaliated

against the Plaintiff when they failed to uphold their oath to perform their duties to transfer the
Plaintiff nephew's case, that was already deemed a conflict, out of county.

47.    As a direct and proximate result of these malicious and conscious wrongful
actions, the Plaintiff has suffered, and will continue to suffer indefinitely, severe emotional and
financial distress, and damages, and is entitled to damages from the Defendants, including
punitive damages, to be determined at trial.

**COUNT THREE**
**HARASSMENT**

48.    Plaintiff alleges and incorporates by reference each and every allegation contained
in the preceding paragraphs as if set forth fully herein.

49.    The Defendant LORI GRIMALDI and JENNIFER SINCOX, conspired together,
knowingly and willfully brought a disciplinary charge against the Plaintiff as result of the
Plaintiff's complaint of discrimination. Which was done to discredit and deny Plaintiff's claims
of harassment and attempts to destroy Plaintiff's reputation with false allegations.

50.    The Defendants, JENNIFER SINCOX, LAURA SCHEWITZER, and DAWN
BREVARD-WATER, failed to follow agency, state and federal policy by investigating Plaintiff's
claims.

51.    The Defendants, JENNIFER SINCOX, and DAWN BREVARD-WATER,
allowed the issuance of a court order against Plaintiff advising the Plaintiff she could not contact
any of her nephew's treatment providers. Plaintiff notified the court regarding a family member's
court involvement and as a result the case was transferred out as it was deemed a conflict. For
reasons unknown, the prosecutor partially transferred the case back although he was still being
monitored in another county due to that conflict. Defendants willfully and purposefully, and with
malice, harassed the Plaintiff creating a hostile work environment by refusing to follow the
JUDICIARY's policy and keep a conflicting case transferred out when the Defendant NJ

JUDICIARY classified it as conflict. The Plaintiff believes this was done to harass and humiliate the Plaintiff.

52.     In December 2017, The Defendants, LAURA SCHEWITZER read one of the Plaintiff's cases and made the decision to review it at the Plaintiff's desk within earshot of surrounding co-workers. Defendant willfully, purposefully, and with malice embarrassed and humiliated the Plaintiff. It is common practice for management to take employees to other areas where the conversation could not be overheard. Additionally, The Defendant LAURA SCHEWITZER advised the Plaintiff to change the entire way the Plaintiff does her court history. Defendants willfully and purposefully, and with malice, harassed the Plaintiff creating a hostile work environment.

53.     Plaintiff notified her supervisor and The Defendants JENNIFER SINCOX about a workplace harassment incident regarding a fellow co-worker. Defendants   JENNIFER SINCOX  recommended the Plaintiff have a meeting with an individual who has and continues to harass the Plaintiff since 2013. Plaintiff did not want to have the meeting and provided a letter from her Licensed Mental Health Counselor advising the meeting was against his medical recommendation and disclosed the meeting would counter Plaintiff's current treatment progress. Plaintiff was forced to attend the meeting. Plaintiff's panic attacks increased and the Plaintiff went out on six weeks stress leave due to continued work place harassment. Defendants willfully and purposefully, and with malice, harassed the Plaintiff creating a hostile work environment.

54.     In January of 2019, Defendant LORI GRIMALDI, the newly appointment Assistant Criminal Division Manager advised the Plaintiff before the start of her shift the Plaintiff needed to change the entire court history (46 arrest) in a report for a client of the court. In facts, Defendant LORI GRIMALDI requested the Plaintiff change the report to the exact opposite way the Criminal Division Manage ordered the Plaintiff to write her report in December of 2017. Defendants willfully and purposefully, and with malice, harassed the Plaintiff creating a

hostile work environment. Defendants LAURA SCHEWITZER and LORI GRIMALDI holds the Plaintiff to a separate standard than other Probation Officers with no training or provided guide.

55.     The Defendant MARISSA QUIGLEY knowingly, willingly and neglectfully refused to reschedule Plaintiff's hearing when the Plaintiff had the flu and Plaintiff was forced to attend the hearing while the Plaintiff was very sick. The Plaintiff could not talk, breathe properly, had diarrhea and was throwing up. Plaintiff was literally forced to seat in diarrhea while in the hearing. Defendants willfully and purposefully, and with malice, harassed the Plaintiff creating a hostile work environment.

56.     On June 18, 2019, the Plaintiff's sister sent a letter to the DEPUTY PUBLIC DEFENDER requesting the Plaintiff's nephew's case be transferred out due to the Plaintiff's EEOC complaint being investigated and the Plaintiff's allegations of harassment and the Plaintiff being in a hostile work environment. Defendants ALEXANDER BATTEY JR, Assistant Prosecutor and CAROLINE BIELAK, Public Defender, abused their power, committed Official Misconduct and harassed the Plaintiff when they failed to uphold their oath to perform their duties to transfer a case that was already deemed a conflict. Defendants willfully and purposefully, and with malice, harassed the Plaintiff creating a hostile work environment.

57.     Defendant CAROLINE BIELAK failed to argue on her client's behalf that the case be transferred out. Within 24 hours of a hearing where Defendant Assistant Prosecutor ALEXANDER BATTEY JR argued that the Plaintiff's nephew case was not a conflict to be in the Vicinage, the Plaintiff was assigned to complete her nephew's PSI report. Defendants willfully and purposefully, and with malice, harassed the Plaintiff creating a hostile work environment.

58.     Defendant LAURA SCHEWITZER and LORI GRIMALDI demonstrated Incompetency, Inefficiency or Failure to Perform duties and Neglect of Duty and when they

knowingly, willingly and/or neglectfully assigned the Plaintiff her nephew's case to complete. Defendants willfully and purposefully, and with malice, harassed the Plaintiff creating a work environment. Defendant LAURA SCHEWITZER then sent an email to the Plaintiff advising Plaintiff not to discuss the case, view or access the case files. The Plaintiff was then forced to talk about the case to advise her supervisor of the situation who had to advise another supervisor of the situation causing more humiliation and embarrassment. Defendants willfully and purposefully, and with malice, harassed the Plaintiff creating a hostile work environment.

59.    In 2012 and 2013, Plaintiff was given cases beyond Plaintiff's level of skill and expected to complete them with little or no training. When Plaintiff was employed for less than twelve months, Plaintiff was assigned to complete a Pre-sentence report on a defendant with seventy-five(75) arrest(75 Superior Court cases; 25 Municipal Court cases). Also, Plaintiff was not told vital information that would help Plaintiff do the job. In February of 2013, 13 months after being employed, Plaintiff was advised she could do the reports without the interviewing clients of the court. Defendants willfully and purposefully, and with malice, harassed the Plaintiff creating a hostile work environment.

60.    In 2012 and 2013, two non-African American probation officers who were hired after Plaintiff were treated differently. They both were given easier cases, given proper training, and had advantages over Plaintiff. One probation officer who was hired directly after Plaintiff gave Plaintiff a copy of an existing database that no one advised the Plaintiff of. Plaintiff had to go to the lower seniority probation officer and asked for assistance with the completion of reports. Plaintiff literally had to go to probation officers hired after her to get information and help with completing assigned tasks. Plaintiff also did not have full access to all of the respective databases/computer systems while other probation officers did. Plaintiff is overlooked for extra duties and responsibilities even after the Plaintiff was advised to seek and volunteered for extra duties and responsibilities. Plaintiff is also excluded for receiving overtime compensation.

Defendants willfully and purposefully, and with malice, harassed the Plaintiff creating a hostile work environment.

61.    In June of 2013, 6/10-6/14, Plaintiff was out on FMLA leave and was assigned to complete five cases. Another probation officer, non-African American was also out on FMLA leave and was not assigned to complete any cases. Then while on vacation, the Plaintiff was assigned to complete six reports. Plaintiff was also scheduled to do reports in short amount of time, while non-African Americans were given more time to complete reports. Defendants willfully and purposefully, and with malice, harassed the Plaintiff creating a hostile work environment. Defendants willfully and purposefully, and with malice, harassed the Plaintiff creating a hostile work environment.

62.    In 2016 Plaintiff was assigned to supervise high profiled client's of the court with no training and no guidelines. Plaintiff never received any training on the procedures to regularly and routinely supervise client's of the court.   Plaintiff was assigned to supervise two of the highest profile client's of the court at that time. Defendants willfully and purposefully, and with malice, harassed the Plaintiff creating a hostile work environment.

63.    Plaintiff filed an EEO complaint against the former Criminal Division Manager, Vicki DiCaro and Assistant Criminal Division Manager, Ann Rizzi, in December of 2013. Approximately six months later, Plaintiff was retaliated against and brought up on two charges. In one complaint the Plaintiff was accused of cussing even when management's witness stated the Plaintiff did not cuss. Additional, everyone in management testified that "everyone cuss" in the office but they were never brought up on charges. The former Criminal Division Manager, Vicki DiCaro and Assistant Criminal Division Manager, Ann Rizzi, were allowed by the Defendant NJ JUDICIARY, ADMINISTRATION OF THE COURT to violated the Plaintiff's right. The former Criminal Division Manager, Vicki DiCaro was allowed by the Defendants NJ JUDICIARY, ADMINISTRATION OF THE COURT to conduct an investigation into the

Plaintiff while the Plaintiff had a pending EEOC complaint against the former Criminal Division Manager, Vicki DiCaro. Moreover, the former TCA Gregory Edwards advised the Plaintiff to violate federal law and forbid the Plaintiff from filing any complaints alleging work place harassment unless the Plaintiff had a witness. Defendants willfully and purposefully, and with malice, harassed the Plaintiff creating a hostile work environment.

64.  The Plaintiff and the Plaintiff's union(PANJ) raised the issue that the subject of the Plaintiff's pending EEO complaint were allowed to not only conduct an investigation into the Plaintiff but the Defendant NJ JUDICIARY, ADMINISTRATION OF THE COURT failed to follow their own policies and procedures with respect to their Code of Conduct, even after Defendant NJ JUDICIARY, ADMINISTRATION OF THE COURT admitted there was a conflict. Defendants willfully and purposefully, and with malice, harassed the Plaintiff creating a hostile work environment.

65.  An African-American investigator filed a complaint with the EEO on the Plaintiff's behalf, to hold former Assistant Criminal Division Manager, Ann Rizzi responsible for her discriminatory practices.  Defendant NJ JUDICIARY, ADMINISTRATION OF THE COURT allowed Assistant Criminal Division Manager, Ann Rizzi to resign from her position instead of being brought up on departmental charges. Furthermore, Plaintiff's EEO complaint was confirmed by these actions, however, Plaintiff's EEO complaints were dismissed by Defendant NJ JUDICIARY, ADMINISTRATION OF THE COURT who alleged they had no merit.  Plaintiff was also not informed of that investigation. Defendants willfully and purposefully, and with malice, harassed the Plaintiff creating a hostile work environment.

66.  After the Plaintiff returned to work after being diagnosed with the flu, Plaintiff she was ordered to performed extra duties including taking clients of the court application for public defender, covering the front desk and answering the phone. The Plaintiff still could not talk well or breath properly, resulting in the Plaintiff suffering an asthma attack and being

escorted out of the building in an ambulance. Plaintiff was advised to seek followup treatment with a gastroenterologist, pulmonologist and an otolaryngologist. The week of December 10 through December 14 the air conditioner was left on in the building as Defendant JENNIFER SINCOX was unable to be located to change the temperature. The Plaintiff was diagnosed with the Flu as a direct result of being in the air conditioner in the winter and the stress of being brought up on these erroneous charges. Defendants willfully and purposefully, and with malice, harassed the Plaintiff creating a hostile work environment.

67.     In 2015, as a result of being retaliated against and harassed, the Plaintiff went to the doctor and after her blood pressure was 208/100 the Plaintiff was prescribed blood pressure medication. The Plaintiff remained on blood pressure medication for approximately three years. In 2017, prior to the issuance of the disciplinary charge, the Plaintiff was taken off of blood pressure medication. Due to continued work place harassment, on August 23, 2019, the Plaintiff was again prescribed blood pressure medication. Defendants willfully and purposefully, and with malice, harassed the Plaintiff creating a hostile work environment.

68.     As a direct and proximate result of these malicious and conscious wrongful actions, the Plaintiff has suffered, and will continue to suffer indefinitely, severe emotional distress, and damages, and is entitled to damages from the Defendants, including punitive damages, to be determined at trial.

## COUNT FOUR
## HOSTILE WORK ENVIRONMENT

69.     Plaintiff alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

70.     The Defendants, LORI GRIMALDI, and JENNIFER SINCOX erroneously charged Plaintiff with a disciplinary charge as a direct result and in Retaliation to Plaintiff's lawful claim of discriminatory treatment from Defendant LORI GRIMALDI. Defendants and JENNIFER SINCOX, LAURA SCHEWITZER and DAWN BREVARD-WATER failed to

follow Federal, State and JUDICIARY policy when they failed to investigate claims of discrimination, and failed to eliminate discriminatory practices within the division.  The entire Division attended a mandatory "Team Building Training". There were three separate session, August 13, 14 and 22 of 2019. In every session, African America employees reports various incidents of discrimination and differential treatment. To date, nothing has been done regarding the reporting of various incidents of discrimination and differential treatment. Defendants, LAURA SCHEWITZER and LORI GRIMALDI attended the first two session and heard the complaints by their employees and has done absolutely nothing to eliminate or improve the current working conditions. Defendants willfully and purposefully, and with malice, permitted a hostile work environment.

71.    Defendants, LORI GRIMALDI, JENNIFER SINCOX, LAURA SCHEWITZER, NATALIE MYERS, and DAWN BREVARD-WATER continued to harass the Plaintiff by holding the Plaintiff to higher standards than every other employee in the division as a result of the Plaintiff's claims of discrimination. Defendants willfully and purposefully, and with malice, harassed the Plaintiff creating a hostile work environment.

72.    Defendants, LORI GRIMALDI, JENNIFER SINCOX, LAURA SCHEWITZER, NATALIE MYERS knowingly, willfully, purposefully lied creating a false narrative that the Plaintiff was incompetent when in fact the Plaintiff was one of the highest assigned Probation Officers in the unit, and the Plaintiff was also one of the highest producing Probation Officer in the unit. Plaintiff completed over 200 cases for that year of 2017 which negates the Defendants claim of Incompetency, Inefficiency or Failure to Perform duties and Neglect of Duty. Defendants willfully and purposefully, and with malice, harassed the Plaintiff creating a hostile work environment.

73.    Defendants, LORI GRIMALDI, JENNIFER SINCOX, LAURA SCHEWITZER, NATALIE MYERS knowingly, willfully, have an environment where racial comments are the

norm. In one incident, The Plaintiff and another black Probation Officer were walking down the employee only hallway and a non-African America supervisor came around the corner in a rushing manner and stated she "I thought you were going to rob me". In another incident an employee stated to another employee who was watching Netflix "Why are you watching a black person's movie, that's disgusting". Defendants willfully and purposefully, and with malice, allowed a hostile work environment.

74.   Plaintiff is labeled as a "problem" and new employees are encouraged to stay away from her. In 2015,  the Plaintiff went to lunch with a new African America Probation Officer. That Probation Officer was told that he had to take lunch at the same time as his mentoring PO. No non-African American employee ever had restrictions on their lunch time. Lunch is between 12 and 2pm. Additionally, that Probation Officer's seat was moved away from away the Plaintiff. That Probation Officer seat was moved on the premise that he would be seated next to his training Probation Officer. However, there was also a new non-African America Probation Officer who was not moved to sit next to his training probation officer. That probation officer's seat was only moved after being seen with the Plaintiff outside of the office. Defendants willfully and purposefully, and with malice, harassed the Plaintiff creating a hostile work environment.

75.   Plaintiff made several complaints regarding the mistreatment from her co-workers, all claims were unfounded even without investigations and Plaintiff was often warned about her behaviors and advised of the code of conduct when the Plaintiff was reporting the harassment. Plaintiff was forced to endure workplace harassment with little to no recourse. Defendants willfully and purposefully, and with malice, harassed the Plaintiff creating a hostile work environment.

76.   In September of 2014, the Plaintiff was forced to go to Employer Assistance Program counseling over alleged statements Plaintiff made with no investigation. Plaintiff was

just informed the allegations were substantiate.  On October 24, 2014, Plaintiff was threaten by another employee and reported it. The Assistance Criminal Division Manager Rizzi called every employee in the building in her office and questioned them regarding the Plaintiff's behavior. Every employee in the office was asked if they ever witnessed the Plaintiff being a bully. No one was questioned regarding Plaintiff's allegations of being bullied. Defendants willfully and purposefully, and with malice, harassed the Plaintiff creating a hostile work environment.

77.     Every complaint the Plaintiff filed against co-workers who bullied or harassed her were not substantiated. Plaintiff believe this was done because the Plaintiff filed an EEO complaint against the former Assistant Division Manager and the former Division Manager. The Plaintiff was allowed to be harassed by co-workers because the Plaintiff filed a complaint against management. After every complaint the Plaintiff was warned about her behaviors and the co-workers who bullied the Plaintiff were never warned. Defendants willfully and purposefully, and with malice, harassed the Plaintiff creating a hostile work environment.

78.     In July of 2014 Plaintiff met with a former supervisor regarding Plaintiff's performance evaluation. The former Assistant Criminal Division Manager advised Plaintiff supervisor to include in Plaintiff's evaluation that Plaintiff was being argumentative with staff when assigned work. The Plaintiff disputed this allegation and was informed that statement although it was not true was put into Plaintiff's performance evaluation because Plaintiff reported being bullied. It was also put in Plaintiff's evaluation that Plaintiff refused to take on extra task, and refused to help co-workers, which was not true. Defendants willfully and purposefully, and with malice, harassed the Plaintiff creating a hostile work environment.

79. The Plaintiff is currently a senior staff, however the Plaintiff has been singled out, separated and labeled as a "problem"  within the division for rightfully filing complaints due to a hostile environment. The Plaintiff is excluded from being considered for overtime. Probation Officers with less than three years of experience have also mentored and trained new Probation

Officers and the Plaintiff has never in her over seven years of employment history been asked to assist new staff. Defendants willfully and purposefully, and with malice, harassed the Plaintiff creating a hostile work environment.

80. On February 9, 2018, Several African American Probations Officers advised Defendants, LAURA SCHEWITZER, about the behaviors of Defendants, LORI GRIMALDI. Defendants, LAURA SCHEWITZER, advised staff to deal with these incidents on their own, an investigation into these incidents was never conducted. One PO(African American male) disclosed she was disrespectful to him in her tone and with her words and she often humiliated him in the presents of his co-workers. Another PO(African American female) expressed her concerns with how Defendants, LORI GRIMALDI was observed speaking to and about the only male African America supervisor. Another PO(African American female) disclosed how she observed Defendants, LORI GRIMALDI being "nasty" and unprofessional and was yelling at a hearing-impaired African American clerk. Another PO(African American female) who recently transferred to the division disclosed how another African American Senior Probation Officer was advised not to help her with learning her new duties. No non-African America PO has ever been advised not to help another probation officer. Defendants willfully and purposefully, and with malice, fostered a hostile work environment.

81. A male African America Probation Officer was transferred from a black male supervisor to supervisor Defendants, LORI GRIMALDI. That PO had prior cases still being reviewed by his former supervisor. Defendants, LORI GRIMALDI went to Assistant Criminal Division Manager Defendants, JENNIFER SINCOX and informed her that the PO was given his cases to the black supervisor and not to Defendants, LORI GRIMALDI which was not true. The entire Probation Officer staff received an emailed ordering Probation Officers not to have other supervisors review cases. Additional, that African America Probation Officer was employed for over 18 months when his supervisors were changed. Defendants, LORI GRIMALDI ordered that

African American PO to change the entire way he completed his reports even though the Criminal Division Manager was approving his previous reports, just to show him as inferior. Defendants willfully and purposefully, and with malice, created a hostile work environment.

82.     Defendants, LORI GRIMALDI was also reported for making derogatory and unprofessional comments to a Hispanic Probation Officer.   Defendants, LORI GRIMALDI was never brought up on any departmental charges she was only advised she had to apologize. Plaintiff also observed Defendants, LORI GRIMALDI tell a fellow co-worker that the Plaintiff had bad body odor. Defendants willfully and purposefully, and with malice, harassed the Plaintiff creating a hostile work environment.

83.     After 2015, the Plaintiff continued to be harassed by her fellow co-worker but was hesitated to report it as Plaintiff feared retaliation again. Plaintiff moved her desk and was forced to be by herself. In 2018, Plaintiff was advised that the co-worker who has harassed her since 2013 was informing new employees and old one not to speak to the Plaintiff. When the Plaintiff reported an incident, the Plaintiff was forced to attend a meeting with the bully even though it was against her doctor's medical advice. Defendants willfully and purposefully, and with malice, harassed the Plaintiff creating a hostile work environment.

84.     Plaintiff suffered so much bullying and harassment, for a period of time Plaintiff refused to take lunch during the time everyone else did and often stayed at her desk to avoid running into co-workers in the neighborhood. Plaintiff also stopped using the staff rest room and only utilities the client's of the court rest room. Defendants willfully and purposefully, and with malice, harassed the Plaintiff creating a hostile work environment.

85.     The environment was so toxic, clients of the court used to acknowledge their observations of the Plaintiff being bullied and mistreated by her fellow co-workers and observed Plaintiff being mistreated by management. Defendants willfully and purposefully, and with malice, harassed the Plaintiff creating a hostile work environment.

86.     The Defendants' actions have, and will continue to cause, the Plaintiff to suffer damage, severe trauma, humiliation, social isolation, depression, severe physical and emotional distress as well as prolonged illness, painful and permanent physical and emotional scarring.

## COUNT FIVE
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

87.     Plaintiff alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

88.     Defendants willfully, intentionally, and recklessly inflicted physical and emotional injury on the Plaintiff by subjecting the Plaintiff to outrageous treatment beyond all bounds of decency. Instead of addressing several allegations of racial discrimination within the division, the Defendant LAURA SCHEWITZER and LORI GRIMALDI mandated all employees within the division attend a "team building" training. At the training they were advised of discriminatory practices and differential treatment and they ignored it.

89.     The Defendants have acted intentionally and recklessly; in an extreme and outrageous manner; and their conduct is the cause of severe emotional distress. .See, e.g., Tuttle v. Atlantic City R.R. Co., 66 N.J.L. 327 (E. & A. 1901); Consolidated Traction Co. v. Lambertson, 60 N.J.L. 457, 458 (E. & A. 1897); Greenberg v. Stanley, 51 N.J. Super. 90, 106 (App. Div. 1958), mod. on other grounds, 30 N.J. 485 (1959); Justesen v. Pennsylvania R.R. Co., 92 N.J.L. 257 (Sup.Ct. 1919); Ward v. West Jersey & S.R.R. Co., 65 N.J.L. 383 (Sup.Ct. 1900); see also Graf v. Taggart, 43 N.J. 303, 312-313 (1964).Further, in Maldonado v. Leeds, 177 N.J. 487 (N.J. 2003) the Court opined that severe emotional distress should not be dismissed because of any lapse of time but, rather, the Court must fairly judge the actual impact of such distress.

> "[I]n order to evaluate fairly whether plaintiff's emotional distress
> was idiosyncratic, the average person must be one similarly
> situated to the plaintiff." Taylor, supra, 152 N.J. at 516, 706 A.2d
> 685.   In our view, a jury may reasonably find that plaintiff did, in
> fact, suffer "serious psychological sequelae," Trisuzzi, supra, 285
> N.J.Super. at 27, 666 A.2d 543, and that her emotional distress is

"palpable, severe, or enduring" as a result of witnessing her son's accident. Decker, supra, 116 N.J. at 431, 561 A.2d 1122. Under the circumstances presented, plaintiff's claims for emotional distress cannot be dismissed "as a matter of law."

Their conduct is "so outrageous in character, and so extreme in degree, that it goes beyond all possible bounds of decency, and is so atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts section 46 cmt. d (1965) The Defendants' conduct is more than just malicious and intentional; it goes beyond mere insults, indignities, threats, annoyances, or petty oppressions.

90.    As a direct and proximate result of these malicious and conscious wrongful actions, the Plaintiff has suffered, and will continue to suffer indefinitely, severe emotional distress, and damages, and is entitled to damages from the Defendants, including punitive damages, to be determined at trial.

## COUNT FOUR
## TORTIOUS INTERFERENCE

91.    Plaintiff alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

92.    The Plaintiff was subjected to discrimination and workplace harassment which lead to a hostile work environment, tortious interference with Plaintiff's prospective and economic advantage and tortious interference with Plaintiff's ability do her job, thereby causing the Plaintiff XXXX XXXX to suffer, and continue to suffer from extreme duress, and, as such she has suffered, and will continue to suffer, financial and economic hardship.

93.    As a direct and proximate result of these malicious and conscious wrongful actions, the Plaintiff has suffered, and will continue to suffer indefinitely, severe emotional distress, and damages, and is entitled to damages from the Defendants, including punitive damages, to be determined at trial.

## **DECLARATION**

Plaintiff declares that she is not an expert in the law but that she does know right from wrong and intends no one harm by her word or deed. Therefore, if any human being is damaged by any statement(s) herein and informs Plaintiff of the facts, she will sincerely make every effort to amend her allegations. Plaintiff hereby reserves the right to amend and make amendment to this document as necessary in order that the truth may be ascertained and proceedings justly concluded. If a party given notice by means of this document has information that would controvert and overcome this affidavit, he/she is respectfully requested to advise Plaintiff IN WRITTEN AFFIDAVIT FORM, sworn/affirmed true, correct, complete, and not misleading upon the Affiant's full commercial liability, within thirty (30) days from the receipt hereof, if Affiant can prove with particularity, by stating all requisite, evidentiary facts and all requisite, actual law – not mere ultimate facts and conclusions of law – that Plaintiff's declarations herein are substantially and materially false, sufficiently to alter materially their status and factual statements. Silence stands as consent to, and tacit approval of, the factual declarations herein being established as matters of law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays this court to enter judgments against Defendants, as follows:

A. For Declaratory Judgment;

B. For Statutory Damages in an amount to be proven at trial;

C. For Punitive Damages in an amount to be proven at trial;

D. For Compensatory Damages in an amount to be proven at trial; and

E. For such other further relief as the court may deem just and proper.


Dated: October 4, 2019

XXXXX XXXXX, PLAINTIFF

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: **Lyreshia Bonds**<br>**525 1st Ave**<br>**North Brunswick, NJ 08902** | From: **Newark Area Office**<br>**283-299 Market Street**<br>**Two Gateway Center, Suite 1703**<br>**Newark, NJ 07102** |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **524-2018-01977** | **Rayba Watson,**<br>**Enforcement Supervisor** | **(973) 645-6021** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____        7-17-19

Enclosures(s)

**John Waldinger,**
**Area Office Director**                    *(Date Mailed)*

cc:    **Shmuel Bushwick**
**Attorney General for the State of New Jersey**
**25 Market Street**
**PO Box 116**
**Trenton, NJ 08625**